### JOHNSTON and JOHNSTON *vs.* COREY.

1. It is the established rule of this court, that an injunction will not be dissolved for new matter in avoidance alleged in the answer, not responsive to the bill.

2. When the defendant in an injunction bill to restrain his proceeding to collect a judgment recovered against the complainants, has not answered a charge of insolvency, and a dissolution of the injunction might leave the complainants remediless in the premises, and compel them to bear burdens from which, in equity, they should be relieved, the injunction will be retained until the hearing.

On motion to dissolve injunction, on bill and answer and affidavits.

*Mr. Jacob Vanatta,* for the motion.

*Mr. H. C. Pitney,* contra.

THE CHANCELLOR.

The defendant moves to dissolve the injunction, on bill and answer.   The complainant, Robert S. Johnston, and the defendant were co-partners together under the firm name of Johnston & Corey, from May, 1872, to April 1st, 1873, when

the co-partnership was dissolved by mutual consent. The business of the firm was keeping a boarding-house and selling goods in a building erected by them for the purpose, on the Asylum grounds, near Morristown. Johnston was a contractor for work on the Asylum buildings, then and still in the course of construction, and employed a large number of workmen there, accordingly. To provide board and lodging for these men and derive the profit therefrom, were the principal objects of the co-partnership. The building was of wood, of considerable dimensions, but of rude construction, both externally and internally. The co-partners furnished it only with such furniture as was absolutely necessary for the business. The store for the sale of merchandise was in part of the building. The firm stocked it, and the business of the sale of merchandise was carried on there during the continuance of the co-partnership. At the dissolution of the firm, Corey, by agreement between him and Johnston, continued to occupy the premises and use the furniture on his own account, for the same purposes for which they had been used by the firm. At the time of the dissolution, April 1st, 1873, Johnston associated with him as partner in his contract, the other complainant, William Johnston, Jr. It was part of their agreement, as they allege, that the liability of the former, in respect to the debts of Johnston & Corey, should be equally shared by them, and that William Johnston, Jr., should be entitled to one-half of Robert S. Johnston's share of the profits of the business of the firm of Johnston & Corey. To this arrangement, they say, Corey consented. From the time of the dissolution to about the 10th of May, following, Corey continued to keep the boarding-house and store. From the last mentioned date to about the 1st of June, following, he did not give the business his personal attention, owing, as he alleges, to his illness. On or about the last mentioned day, the complainants took possession of the building and proceeded to carry on the business of the boarding-house and store there, on their own account. Corey says they took possession of a very considerable amount of goods belonging to

him, which were then in the store, and disposed of them for their own account. From the dissolution, and as it appears up to the 1st of May, following, Corey boarded one hundred and eighteen of the workmen of the complainants, for which he was entitled to receive from the latter, by reason of their assumption of the debt, $951.69, and during the same period he sold to workmen of the complainants, goods out of the store to the amount of $340.77, for which, by like assumption, the complainants were liable to him. On the 5th of June, 1873, he commenced a suit against the complainants to recover these amounts, with interest, in the Circuit Court of Morris county, and on the 19th of August, following, recovered judgment against them by default, for the sums so claimed, with interest from the 10th of May, next preceding, and costs of suit. On the same day, an execution was issued on the judgment, and levied on the property of the complainants. They then filed their bill to enjoin him from enforcing payment of the judgment, on the ground that the arrangement by which he was permitted to occupy the building and use the furniture on his own account, after the dissolution, was based on his agreement with the complainants, to pay off, by means of the board of the workmen and the sales of goods to them, his share of the debts of Johnston & Corey ; the money to become due to him on which accounts, from their workmen, the complainants were to retain, as far as necessary for the purpose, to be applied to so much of the outstanding indebtedness of the firm of Johnston & Corey as he was bound to pay. This indebtedness, they allege, is considerable, and they also allege that they have been unable, by reason of his keeping exclusive possession of the books and papers of the concern, to ascertain its amount. They charge upon him, fraudulent dealing, among other things, in appropriating to his own use the property of the firm, without accounting therefor, and in creating debts in the name and on the credit of the firm, on his own account. They allege that he is entirely insolvent, and that, although since the dissolution he promised to indemnify the complainants against his share of

the indebtedness of the firm, by giving them security there-for, he has broken his promise and refuses to furnish the security.   On the filing of the bill an injunction was issued, on terms of giving the bond required by statute in such cases. The defendant has answered, denying the fraud charged upon him.   He denies that he has either refused to account with the complainants or to permit them to examine the books, but alleges that on the other hand, he has been desirous of coming to an account of the partnership affairs, and has so informed them, and says, that they have been denied no access to or opportunity of examining the books.   He states that at the dissolution, the assets of the concern amounted to $4871.75, and the debts to $3143.82, and that since then he has collected of the debts due to the firm, $171.68, and paid of the firm's debts, $285.03.   He further states that at the filing of the answer, the assets amounted to $4710.07, and the whole unpaid indebtedness to $2858.79, leaving a surplus of $1851.28, from which is to be deducted the amount of $113.35, for debts paid by him since the dissolution, over and above his receipts, and a clear balance will be left of $1737.93, applicable to the payment of the capital put into the concern. In this exhibit of the affairs of the firm, he puts down the building at $2337.22, and the furniture at $864.32, and the debts due to the concern are stated to be $278.06.   For these debts he alleges Robert S. Johnston is liable by reason of his assumption thereof, they being due, as he states, from Johnston's workmen, from whose wages Johnston was, by agreement between him and Corey, to have retained the amount. Whether the assets of the firm are sufficient, according to Corey's statement in the answer, for the payment of their debts, depends on whether the valuation of the building and furniture is just, and on the collectibility of the debts just referred to due to the firm.   The building and furniture are set down at what Corey says is their cost.   On the dissolution of the firm they would probably have been disposed of by sale, but for the arrangement by which he was to be permitted to use them.   It is not at all probable that on such sale, the

firm could have realized cost for the building or furniture. The loss on them would probably have been very great. The building is merely a rude temporary structure, erected for a special purpose, on land owned by the state, and the use to which the furniture had been subjected, would probably have rendered it of no considerable value. The defendant, however, seeks to justify these valuations, by the fact that, as he alleges, he was unjustly dispossessed of the property by the complainants, who took it to their own exclusive use, not only without his consent, but against his will and in utter disregard and violation of his rights. These valuations, therefore, are dependent on the facts alleged in support of them, which appear for the first time in the cause, in the answer. The valuations together amount to $3201.54. This new matter is met by affidavits on the part of the complainants, one of which, made by a person very competent to value the property, fixes the original cost of the building at about $1400, and its value, if taken down and removed, at not over $250. By these affidavits it appears that the furniture had been greatly depreciated in value by use, at the dissolution, and would then have brought at a sale but a very inconsiderable sum. The facts themselves by which the defendant seeks to justify his valuations, are denied by these affidavits. It is enough to say that those facts are new matter. So, also, of the defendant's statement in regard to the liability of Robert S. Johnston for the payment of the debts due to the concern, which the defendant says, amount to $278.06, and all of which he sets down as collectible, because of the alleged liability of Robert S. Johnston to pay them. It is the established rule of this court, that an injunction will not be dissolved for new matter in avoidance alleged in the answer, not responsive to the bill. *West Jersey Railroad Company* v. *Thomas*, 6 *C. E. Green* 205, and cases there cited.

The defendant has not answered the charge of insolvency made against him in the bill. The case is an appropriate one for exercising the restraining power of the court. *High on*

*Injunctions,* § 829; *Kerr on Injunctions* 169 ;. *Gold* v. *Can-ham,* 1 *Ch. Ca.* 311.   To dissolve the injunction and permit the defendant to proceed to collect the judgment he has recovered, might be to leave the complainants practically remediless in the premises, and to compel them to bear burdens, from the liability to which they should in equity, under the circumstances, be relieved.   Corey, on the other hand, in addition to the lien of his judgment and execution,. has the security which by law is required to. be given,. on application of a defendant to this court to stay proceedings at law in a personal action after verdict or judgment.

The injunction should be retained until the hearing.   The motion to dissolve is denied, with costs.